# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* [UNDER SEAL],<br><br>*Plaintiffs,*<br><br>v.<br><br>[UNDER SEAL],<br><br>*Defendant.* | Civil Action No. _____<br><br>**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. §§ 3729** *et seq.*<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY DEMAND** |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DAVID REED<br><br>*Plaintiffs,*<br><br>v.<br><br>SHOTTENKIRK AUTOMOTIVE GROUP, INC.<br><br>Address:<br>309 S. Gear Ave.,<br>West Burlington, IA 52655<br><br>Registered Agent:<br>Artemio M. Santiago<br>711 Avenue G<br>Fort Madison, IA 52627<br><br>*Defendant*. | **Civil Action No. _____**<br><br>**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. §§ 3729** *et seq.*<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY DEMAND** |

## COMPLAINT

### INTRODUCTION

1. *Qui tam* Relator David Reed ("Reed"), by and through undersigned counsel, individually and on behalf of the United States of America, files this Complaint against Shottenkirk Automotive Group, Inc. ("Shottenkirk Automotive Group") to recover damages, penalties, and attorneys' fees and costs for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. ("FCA").

2. Shottenkirk Automotive Group is a management company that oversees the Shottenkirk auto dealership group ("Shottenkirk"), which comprises at least 28 associated business entities and collectively employs over 971 employees.

1

3. In 2020, thirteen business entities associated with Shottenkirk, including Shottenkirk Automotive Group, received loans under the Paycheck Protection Program (PPP). These loans totaled $10,757,700 and were forgiven for a total of $10,880,752.

4. Relator believes that twelve of Shottenkirk's associated entities have valid franchise agreements with franchisors listed on the Small Business Administration's (SBA's) franchise list. For purposes of the PPP loan, this means that only the employees of that individual franchisee are counted when determining the entity's eligibility for a PPP loan.

5. However, for one of the entities, Shottenkirk Automotive Group, Relator believes there is no valid franchise agreement in place, meaning all employees of all Shottenkirk affiliated entities must be aggregated for determining Shottenkirk Automotive Group's PPP eligibility.

6. Additionally, all revenue for all Shottenkirk affiliated entities must be aggregated for determining Shottenkirk Automotive Group's PPP eligibility under SBA's alternative size standard.

7. Defendant Shottenkirk Automotive Group received a PPP loan for $321,400, claiming 32 employees. The loan was ultimately forgiven for $325,080.69.

8. The U.S. government also paid a $16,070 processing fee to New Mexico Bank and Trust, a division of HTLF Bank, for processing Shottenkirk Automotive Group's PPP loan.

9. Because Shottenkirk Automotive Group was ineligible to receive PPP loans, yet falsely certified to the U.S. government that it was eligible to receive a PPP loan and falsely certified that it was eligible for loan forgiveness, these false statements led to the submission and payment of false claims for payment to the U.S. government.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 because this action arises under the False Claims Act as amended at 31 U.S.C. §§ 3729–3733.

11. This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3729(a) because Defendant is domiciled within this judicial district.

12. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. §§ 1391 and 1395(a) because Defendant is domiciled within this judicial district.

13. This action is not based on public disclosure.

14. Pursuant to 31 U.S.C. § 3730(b)(2), Relator has provided the Government with a copy of this Complaint and a written disclosure of substantially all material, evidence, and information in his possession.

## THE PARTIES

*Relator David Reed*

15. Relator David Reed is a resident of Cary, North Carolina.

16. Reed worked in the field of information technology prior to his retirement in 2019.

*Defendant Shottenkirk Automotive Group*

17. Shottenkirk Automotive Group is a domestic Iowa corporation that was formed in December 2001.

18. Shottenkirk Automotive Group is the management company that oversees the Shottenkirk auto dealership group.

19. Shottenkirk Automotive Group is headquartered at 309 S. Gear Ave., West Burlington, IA 52655.

20. Gregory Shottenkirk owns and operates the Shottenkirk auto dealership group and serves as its President and CEO.

21. Shottenkirk has 28 business locations, including three dealerships in Iowa, ten dealerships in Texas, seven locations in Georgia, three locations in Alabama, three locations in Illinois, and two locations in California. All Shottenkirk entities listed below are also owned and operated by Gregory Shottenkirk.

   a. Shottenkirk Chevrolet Buick GMC Fort Madison, 5031 Avenue O, Fort Madison, IA 52627;

   b. Shottenkirk Chevrolet Waukee, 755 Hickman Rd., Waukee, IA 50263;

   c. Shottenkirk West Burlington Superstore, 309 S. Gear Ave., West Burlington, IA 52655;

   d. Shottenkirk Chrysler Dodge Jeep Ram Granbury, 4970 E. US Hwy. 377, Granbury, TX 76049;

   e. Shottenkirk Chrysler Dodge Jeep Ram Prosper, 2550 W. University Dr., Prosper, TX 75078;

   f. Shottenkirk Ford Granbury, 4950 E. US Hwy. 377, Granbury, TX 76049;

   g. Shottenkirk Hyundai Granbury, 4960 E. US Hwy. 377, Granbury, TX 76049;

   h. Shottenkirk Jaguar Boerne, 32120 IH-10 West, Boerne, TX 78006;

   i. Shottenkirk Kia Fort Bend, 26633 Southwest Freeway, Rosenberg, TX 77471;

   j. Shottenkirk Land Rover Boerne, 32120 IH-10 West, Boerne, TX 78006;

   k. Shottenkirk Nissan Katy, 25550 Kingsland Blvd., Katy, TX 77494;

l.  Shottenkirk Toyota Granbury, 5100 W. Hwy. 377, Granbury, TX 76476

m. Shottenkirk Toyota of San Antonio, 18019 US-281 San Antonio, San Antonio, TX 78232;

n.  Shottenkirk Toyota of Weatherford, 2601 E. I-20 Service Rd., Hudson Oaks, TX 76087;

o.  Shottenkirk Chrysler Dodge Jeep Ram of Canton, 200 Liberty Blvd., Canton, GA 30114;

p.  Shottenkirk Ford Jasper, 868 Jasper Heights, Jasper, GA 30143;

q.  Shottenkirk Honda of Cartersville, 539 E. Main St., Cartersville, GA 30121;

r.  Shottenkirk Honda of Rome, 965 Veterans Memorial Hwy. NE, Rome, GA 30161;

s.  Shottenkirk Hyundai Canton, 300 Liberty Blvd., Canton, GA 30114;

t.  Shottenkirk Hyundai Rome, 965 Veterans Memorial Hwy. NE, Rome, GA 30161;

u.  Shottenkirk Nissan Rome, 1500 Veterans Memorial Hwy. NE, Rome, GA 30161;

v.  Shottenkirk Acura Huntsville, 2402 Leeman Ferry Rd. SW, Huntsville, AL 35801;

w. Shottenkirk Honda Decatur, 735 Beltline Rd. SW, Decatur, AL 35601;

x.  Shottenkirk Honda Huntsville, 6591 Hwy. 72 W, Huntsville, AL 35806;

y.  Shottenkirk Chevrolet Quincy, 1537 N. 24th St., Quincy, IL 62301;

z.  Shottenkirk Kia Quincy, 1330 N. 24th St., Quincy, IL 62301;

aa. Shottenkirk Toyota of Quincy, 5333 Broadway St., Quincy, IL 62305;

bb. Shottenkirk Desert Lexus, 67855 E. Palm Canyon Dr., Cathedral City, CA 92234;

cc. Shottenkirk Honda of Davis, 4343 Chiles Rd., Davis, CA 95618.

22. According to PPP loan application data, the thirteen entities associated with Shottenkirk that applied for and received PPP loans in 2020 have a combined total of approximately 971 employees.

23. Shottenkirk entities generated a total of over $900 million in revenue in 2020.[1]

<b>OVERVIEW OF APPLICABLE LAWS, RULES, AND REGULATIONS</b>

*The Paycheck Protection Program*

24. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is a law intended to address the economic fallout of the COVID-19 pandemic in the United States.

25. The CARES Act resulted in, *inter alia*, the Paycheck Protection Program. Coronavirus Aid, Relief, and Economic Security Act, No. 116-136 (March 27, 2020).

26. The PPP is a loan program designed to provide eligible businesses low-interest rate loans guaranteed by the Small Business Administration (SBA) with support from the Department of the Treasury.

27. Businesses seeking a PPP loan can apply through any existing SBA 7(a) lender, through a federally insured depository institution or credit union, or through a participating Farm Credit System institution.

28. The foregoing private institutions approve and authorize PPP loans and are subsequently reimbursed by the federal government.

29. For its work to process the application and fund the loan, the SBA pays the lender a processing fee based on the size of the loan funded by the lender. SBA will pay lenders fees for processing PPP loans in the following amounts:

    a. Five (5) percent for loans of not more than $350,000;

---

[1] "Top 150 dealership groups based in the U.S.," https://s3-prod.autonews.com/2021-12/2020-Top-150-Dealership-Groups.pdf.

    b.   Three (3) percent for loans of more than $350,000 and less than $2,000,000; and

    c.   One (1) percent for loans of at least $2,000,000.

*SBA Procedural Notice*, SMALL BUS. ADMIN., https://www.sba.gov/sites/sbagov/files/2021-03/5000-20036-508.pdf.

30. The PPP program provides small businesses with funds to pay up to 24 weeks of payroll costs including benefits.

31. The PPP is similar to existing SBA Loan Programs. However, the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere, as defined in the Small Business Act. 15 U.S.C. § 632(h).

32. The PPP section of the CARES Act expanded eligibility for SBA loans beyond the limitations of the Small Business Act. 15 U.S.C. §§ 632, 636.

33. The following entities affected by Coronavirus (COVID-19) may be eligible:

    a.   Any small business concern that meets SBA's size standards (either the industry-based size standard or the alternative size standard);

    b.   Any business, 501(c)(3) non-profit organization, 501(c)(19) veterans' organization, or Tribal business concern (sec. 31(b)(2)(C) of the Small Business Act) with the greater of:
        i.   500 employees, or
        ii.   That meets the SBA industry size standard if more than 500, or
        iii.   Any business with a [North American Industry Classification System ("NAICS")] Code that begins with 72 (Accommodations and Food Services) that has more than one physical location and employs less than 500 per location;

    c.   Sole proprietors, independent contractors, and self-employed persons.

34. The size of a business concern is determined under the SBA's size standards as they apply to the "concern whose size is at issue and **all of its domestic and foreign affiliates**." 13 C.F.R. § 121.301(f)(6) (emphasis added).

35. Entities that apply for a PPP loan submit their Borrower Application Form to a federally insured depository institution, federally insured credit union, or a Farm Credit System ("Lender") which processes the loan application and funds the loan.

36. The SBA guarantees 100% of the outstanding balance, and that guarantee is backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

37. For its work to process the application and fund the loan, the SBA pays the Lender a processing fee based on the size of the loan funded by the Lender. SBA will pay lender fees for processing First Draw PPP loans in the following amounts: Five (5) percent for loans of not more than $350,000; Three (3) percent for loans of more than $350,000 and less than $2,000,000; and One (1) percent for loans of at least $2,000,000. 15 U.S.C. § 636(a)(36)(P).

38. To be eligible for loan forgiveness, borrowers must complete SBA Form 3508 or SBA Form 3508EZ to calculate eligible payroll and nonpayroll costs.

39. Borrowers must certify that the dollar amount for which forgiveness is requested:

   a. Was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
   b. Includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;
   c. Includes payroll costs equal to at least 60% of the forgiveness amount; and
   d. Does not exceed eight weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual or, if a 24-week covered period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual.

*SBA Form 3508 "Paycheck Protection Program Loan Forgiveness Application"* (June 2020).

40. Additionally, borrowers must certify that:

      a. They have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, and business utility payments; and

      b. The information provided in the application and the information provided in all supporting documents and forms is true and correct in all material respects.

*Id.*

41. An entity can also be eligible for a PPP loan as a small business concern if it meets both tests of SBA's "alternative size standard" as of March 27, 2020:

      a. The maximum tangible net worth of the business is not more than $15 million; and

      b. The average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

SMALL BUS. ADMIN, "*Paycheck Protection Program Loans Frequently Asked Questions (FAQs)*" (June 25, 2020).

***SBA Exceptions and Limitations on Affiliation and Loan Eligibility***

42. SBA Form 2483, which all applicants must submit to be considered for a PPP loan, requires an indication of Yes or No to the question: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A." SBA Form 2483, "Paycheck Protection Program Borrower Application Form" (April 2020).

43. Agency guidance specified that "applicants in SBA's Business Loan Programs (which include the PPP) are subject to the affiliation rule contained in 13 CFR § 121.301." SBA

9

Interim Final Rule "Business Loan Program Temporary Changes; Paycheck Protection Program." 85 Fed. Reg. 20,819 (April 15, 2020).

44. Entities that have the power to control one another are affiliates of one another. Entities that are controlled by the same third party are also affiliates of each other as well as of the third party. 13 C.F.R. § 121.301(f).

45. Entities are also considered affiliates of one another if a principal of an entity controls the management of another. Affiliation between entities also arises if a single individual controls the management or Board of Directors of those entities. 13 C.F.R. § 121.301(f)(3).

46. The CARES Act waived the § 121.103 affiliation provisions for a limited category of business concerns: businesses in the Accommodation and Food Services sector as determined by their North American Industry Classification System (NAICS) code; businesses operating as a franchise that are listed in the SBA's Franchise Directory; and businesses receiving financial assistance from a licensed Small Business Investment Company (SBIC). 15 U.S.C. §636(a)(36)(D)(iv).

47. On the First Draw PPP Loan Borrower Application Form, the Applicant must indicate yes or no if it is a franchise that is listed in the SBA's Franchise Directory. The Applicant is not required to list the Franchise Identified Code issued by the SBA on this form. SBA Form 2483, "Paycheck Protection Program Borrower Application Form" (April 2020).

48. If a business knowingly makes false certifications on the PPP loan application and receives a PPP loan, then the business is in violation of the False Claims Act.

49. If a business that receives a PPP loan, subsequently submits a loan forgiveness application, and knowingly makes false certifications on the loan forgiveness application, then the business is in violation of the False Claims Act.

50. At all times herein mentioned, Defendant had knowledge of the public policies expressed in the guidelines herein mentioned, and of the fact that it must comply with all applicable SBA guidelines in order to receive a PPP loan and to apply for full forgiveness of a PPP loan.

***The Federal False Claims Act***

51. The FCA, 31 U.S.C. § 3729(a)(1)(A), makes knowingly presenting or causing to be presented to the United States any false or fraudulent claim for payment a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and the appropriate civil monetary penalty.

52. The FCA, 31 U.S.C. § 3729(a)(1)(B), makes knowingly making, using, or causing to be used or made, a false record or statement to get a false or fraudulent claim paid or approved by the government a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and the appropriate civil monetary penalty.

53. The False Claims Act also imposes liability for knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the government. 31 U.S.C. § 3729(a)(1)(G).

54. The term "knowingly" as used in the FCA means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. *Id.* § 3729(b). No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA. *Id.*

## FACTUAL ALLEGATIONS

55. As outlined above, an entity was eligible for a first draw PPP loan if it met one of the three criteria to be a small business by: (1) having less than 500 employees; (2) meeting the SBA industry size standard if the entity had more than 500 employees; or (3) having a NAICS Code that begins with 72.

56. An entity was also eligible for a first draw PPP loan if, as of March 27, 2020, it met the alternative size standard, defined as: (1) the maximum tangible net worth of the business was not more than $15 million; and (2) the average net income after federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application was not more than $5 million.

57. Entities had to aggregate, consider, and report the total number of employees and revenue for all affiliated domestic and foreign entities to determine small business eligibility for the PPP. Entities that had valid franchise agreements did not have to aggregate, consider, and report the total number of employees and revenue for all affiliated entities on their PPP applications.

58. Entities are considered affiliates if they: (1) have the power to control one another; (2) are controlled by the same third party; or (3) if a principal of an entity controls the management of another.

59. Entities are also considered affiliates if a single individual controls the management or Board of Directors of those entities.

60. The Shottenkirk dealership group and its associated business entities received multiple first draw PPP loans in 2020.

61. All Shottenkirk entities, including all dealership locations as well as the management entity Shottenkirk Automotive Group, are affiliates of one another because Gregory Shottenkirk, the President and CEO of Shottenkirk, controls the management of all entities affiliated with Shottenkirk.

62. Although thirteen entities affiliated with Shottenkirk received PPP loans, Relator believes that twelve of these entities had valid franchise agreements which would exempt them from the affiliate rules of the PPP.

63. On April 14, 2020, Shottenkirk Automotive Group received a PPP loan for $321,400 from New Mexico Bank and Trust.

64. For funding Shottenkirk Automotive Group's PPP loan, New Mexico Bank and Trust received a five per cent processing fee from the SBA which totaled $16,070.

65. Shottenkirk Automotive Group's PPP loan was forgiven on June 11, 2021, in the amount of $325,080.69.

66. Relator understands that Shottenkirk Automotive Group is a management entity that does not sell cars and does not have a dealership license or a franchise agreement.

67. Therefore, the employees for *all* affiliated Shottenkirk entities must be counted to determine whether Shottenkirk Automotive Group was eligible to receive a PPP loan.

68. In April 2020, Shottenkirk Automotive Group reported that it had 32 employees on its PPP loan application.

69. In 2020, thirteen entities associated with Shottenkirk, including Shottenkirk Automotive Group, received PPP loans. If the employee counts on each of these entities' 2020 PPP loan applications is to be believed, the thirteen Shottenkirk entities that received PPP loans

in 2020 reported a total of 971 employees. This does not consider or include the other Shottenkirk entities that did not receive PPP loans.

70. Because these entities are all affiliates of Shottenkirk, Shottenkirk Automotive Group should have reported over 971 employees on its PPP loan application.

71. Due to the number of employees of all affiliated entities, Shottenkirk Automotive Group was ineligible to receive its PPP loan and was therefore ineligible to receive forgiveness of its PPP loan.

72. Shottenkirk Automotive Group was also ineligible to receive its PPP loan and to receive forgiveness of its PPP loan because all Shottenkirk entities collectively generated over $900 million in revenue in 2020, making Shottenkirk Automotive Group and its affiliates too large in terms of revenue to be eligible to receive PPP loans.

**COUNT I**
**Violation of The False Claims Act**
**31 U.S.C. § 3729(a)(1)(A)**
**Knowingly Submitting False Claims for Payment**

73. Relator incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

74. The False Claims Act imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

75. Defendant submitted a false claim for payment to the United States government by certifying on SBA Form 2483 that Shottenkirk Automotive Group had under the requisite number of employees to be eligible for the PPP loan even when the employees of all affiliated entities were counted. In reliance on these statements, New Mexico Bank and Trust submitted

claims to the U.S. government which resulted in the government paying New Mexico Bank and Trust processing fees that totaled $16,070.

76. Had the government known that Shottenkirk Automotive Group and its affiliated entities had over 500 employees, it would not have issued the PPP loan and granted loan forgiveness.

77. Defendant knew or should have known that in order to be eligible to receive a PPP loan and have the loan forgiven, it needed to have fewer than 500 employees among all affiliated entities.

78. The United States of America has been damaged by the aforementioned misrepresentations in an amount to be determined at trial.

79. Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

**COUNT II**
**Violation of The False Claims Act**
**31 U.S.C. § 3729(a)(1)(B)**
**Knowingly Making False Records and Statements Material to a False Claim**

80. Relator incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

81. The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim submitted to get a false or fraudulent claim paid or approved by the United States government. 31 U.S.C. § 3729(a)(1)(B).

82. Defendant made false statements that were material to false claims for payment by submitting a PPP loan application to New Mexico Bank and Trust certifying that Defendant was eligible to receive a PPP loan. In reliance on these false statements, New Mexico Bank and

Trust submitted claims to the U.S. government which resulted in the government paying New Mexico Bank and Trust processing fees that totaled $16,070.

83. Had the government known that Shottenkirk Automotive Group and its affiliated entities had over 500 employees, it would not have issued the PPP loan, granted loan forgiveness, or paid New Mexico Bank and Trust the processing fee associated with the loan.

84. Defendant knew or should have known that in order to be eligible to receive a PPP loan and have the loan forgiven, it needed to have fewer than 500 employees among all affiliated entities.

85. The United States of America has been damaged by the aforementioned misrepresentations in an amount to be determined at trial.

86. Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

**COUNT III**
**Violation of The False Claims Act**
**31 U.S.C. § 3729(a)(1)(G)**
**Knowingly Concealing or Improperly Avoiding or Decreasing an Obligation**
**to Pay or Transmit Money or Property to the Government**

87. Relator incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

88. The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G).

89. Defendant concealed its ineligibility for the PPP loan by submitting an application to the U.S. government which stated that Defendant used all PPP monies in accordance with the rules and regulations and requested forgiveness of the full PPP loan and interest. In submitting these false statements, Defendant sought to reduce or eliminate its obligation to repay the full amount of the dispersed PPP loan with interest.

90. Had the government known that Defendant was ineligible to receive the PPP loan in the first place, it would have required Defendant to repay the dispersed PPP loan with interest.

91. Defendant knew or should have known that in order to be eligible to receive a PPP loan and have the loan forgiven, it needed to have fewer than 500 employees among all affiliated entities.

92. The United States of America has been damaged by the aforementioned misrepresentations in an amount to be determined at trial.

93. Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

## PRAYER FOR RELIEF

Wherefore, Relator Reed, acting on behalf and in the name of the United States of America and on his own behalf, prays that judgment will be entered against Defendant, for violations of 31 U.S.C. § 3729(a)(1)(A), (B), and (G) as follows:

a. This Court enter judgment against Defendant in an amount equal to three (3) times the amount of damages the United States Government has sustained because of the Defendant's actions plus the maximum civil penalties for each act in violation of 31 U.S.C. § 3729;

b. In favor of Relator for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorneys' fees, and costs incurred by Relator;

c. That, in the event the United States Government elects to intervene in and proceed with this action, Relator be awarded between 15% and 25% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(1);

d. That, in the event that the United States Government does not proceed with this action, Relator be awarded between 25% and 30% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(2);

e. That, pursuant to 31 U.S.C. § 3730(c)(5), Relator be awarded a share of any alternate remedy that the United States Government elects to pursue;

f. For all costs of the civil action;

g. That permanent injunctive relief be granted to prevent any recurrence of the False Claims Act conduct described above for which redress is sought in this Complaint;

h. That the United States and the Relator be awarded prejudgment and post judgment interest;

i. In favor of Relator and the United States for further relief as this Court deems to be just and equitable; and

j. Such other relief as this Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a jury trial.

Dated: January 29, 2025

Respectfully submitted,

_____/s/ *James C. Larew*_____
James C. Larew (IA Bar No. AT0004543)
Larew Law Office
504 E. Bloomington St.
Iowa City, IA 52245
Telephone: 319-337-7079
Facsimile: 319-337-7082
larewlaw@aol.com

R. Scott Oswald (to be admitted *pro hac vice*)
Janel Quinn (to be admitted *pro hac vice*)
The Employment Law Group, P.C.
1717 K St. NW, Suite 1110
Washington, DC 20006
Telephone: 202-261-2813
Facsimile: 202-261-2835
soswald@employmentlawgroup.com
jquinn@employmentlawgroup.com

*Counsel for Qui Tam Relator*